# MURRIN LAW FIRM

**J. Owen Murrin**
**Attorney at Law**
7045 E. Los Santos Drive
Long Beach, CA 90815
562-342-3011 (office)
952-994-1066 (cell)
562-724-7007 (fax)

April 9, 2015

BY ECF

Judge P. Kevin Castel, Courtroom 12C
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

    Re:    Kumar v. Gemini et al,
                USDC Case No: 15-cv-00017-PKC (DCF)

## JOINT LETTER

Dear Judge Castel:

This Joint Letter is a response for the Initial Conference scheduled for April 16, 2015 at 11:00 a.m.

## I. Description of the Case

### PLAINTIFFS' BREIF DESCRIPTION OF THE CASE

Plaintiffs, are "ma and pa" investors from Main Street USA solicited by Defendant Gemini, through one of its numerous and purposefully confusing affiliated entities. Gemini is the product of William Obied and Dante Massaro, the promoters of this investment. The investment was sold as a solid and safe investment. It was designed to serve the conservative and moderate investors planning for retirement who wanted regular monthly payments and a fully managed property on a turnkey basis. This investment allowed the prospective investors an opportunity to sell their duplexes and small apartment buildings and be able to participate in securing institutional grade property that would provide them regular monthly cash flow. They were to receive their money back upon the sale of the property in 8 to 10 years. The last set of investors closed on the property January 28, 2008. The investment was projected and sold as distributing 7.12% per annum in

monthly payments. On or about March 23, 2008, the first checks were received by the investors. A few months later, on May 20, 2008, Gemini announced it was cutting back the distribution rate from 7.12% to 5.5%. After four or five months, in October of 2008, Gemini advised the investors that all distributions would cease. The investors were told this was a temporary suspension. Year after year, the investors continued to get optimistic reports that cash distributions were about to begin again, but restoration never happened. The average investor put around $350,000 in this investment. There was about 20 investors. The investment structure is commonly called a TIC. It was an experimental structure, operating since 2004 about the same time that mortgage securitization started to heat up and fund commercial projects.

As late as 2012, the investors were still being told it was envisioned that "Gemini's target of turning positive cash flow by Spring of 2013," would be met. That did not happen. Eventually the property went into foreclosure because Gemini was not paying the mortgage.

The property is a shopping center in Austell, Georgia. The investors hired a Georgia lawyer to enjoin the non-judicial foreclosure because of irregularities. According to the Report of Foreclosure Sale, the property sold for $9,500,000 on September 2, 2014 at that time the balance on the debt was $14,060,914.14. This was not a real sale or arm's length transaction. It was a conveyance back to the foreclosing party which started out being U.S Bank as trustee for this securitized trust. However, Defendant GCCFC 2007 Connector Retail Limited Partnership ("CRLP"), became an assignee and completed the foreclosure. That injunction was denied leaving this action as the only form of recourse for the investors. Forum selection and law selection clauses require the case transfer to N.Y. The unfortunate thing is that the foreclosure was not proper and it was wrongful. Thus this is one of the Plaintiffs' investors' cause of action.

There is no evidence that the Defendant, the Depositor, Greenwich Capital Commercial Funding Corporation ever conveyed its rights to the loan or note or the security to the loan or note downstream. That means that there is a gap in the chain of title. In addition, the documents necessary to maintain lien rights were not timely filed in the land recording office. Therefore, CRLP is not in the chain of title to have been able to properly foreclose, and so it is requested that the foreclosure in CRLP's favor be set aside or that damages be awarded.

Gemini bought this property for $19,000,000, but sold it to this group of investors shortly after for $21,075,000, after convincing the investors this investment was a safe turnkey operation that they would be able to manage profitably to assure the monthly distribution. Gemini secured the loans separately and told the investors that these were non-recourse loans. Later Gemini made investors sign assumptions and guarantees for the loans.

The money that made this deal possible came from a public offering that Defendant Goldman Sachs Mortgage Company sponsored with Defendant Greenwich Capital Financial Products, Inc., underwritten by Defendants Goldman, Sachs & Co, and RBS Securities Inc. Goldman Sachs & Co. profited by selling short on this and /or other security, knowing a substantial amount of the notes that made up the security like this particular Gemini note, were risky and not worth the value it claimed when it was sold to the public. The SEC charged RBS Securities Inc

with placing notes that did not have the value represented into these securities and/or securitized trusts, and RBS Securities Inc paid $150,000,000 to settle the case. By the time this investment closed, Goldman Sachs & Co., and the Greenwich Defendants were aware that they were encouraging and fostering the likes of Gemini promoters to bring in questionable investment products into the securitized pools they were sponsoring. Knowing this and the likely problems that this would create down line, they went ahead and not only funded these deals but also encouraged them. They took advantage of their highly regarded status in society as a qualified financial institution. These toxic financial products not only took money from Plaintiffs, but also contributed greatly to the instability in the economy. The securitization program dispensed with proper due diligence and underwriting and resulted in loans being approved that would have been rejected under a traditional lender's procedures and policies, an additional fact that needed to be disclosed that was not. Plaintiffs' investment was only one property in the loan pool that made up this particular securitization. DEFENDANTS led PLAINTIFFS to believe they were dealing with a traditional lender, which meant the investors thought that the investment passed rigorous guidelines, when in fact the opposite was true in the securitized lending world. This fact needed to be disclosed and was not.

The money that went to fund plaintiffs investment is a direct result of bad behavior on the part of Greenwich and Goldman Sachs & Co. Gemini's ability to do this deal would never or should never have been possible but for the conduct at Greenwich and Goldman Sach's. Many of the causes of action including unfair business practices, violation of deceptive acts or practices, aiding and abetting, conspiracy and RICO bring all the parties into the endeavor.

Basically this Gemini investment to Plaintiffs was not investment grade. All the Defendant participants knew it but sponsored it either through direct involvement by placing the loan or in raising the money that provided the outlet for the money being available to Gemini- thus Greenwich and the Goldman Sach's liability. This involves lack of disclosure, concealment, and fraud. The harm caused by these violations also constitute equitable violations that allow disgorgement and recoupment of any unjust enrichment enjoyed by DEFENDANTS and/or include damages in the form of the loss of their principal, plus interest, attorney fees, and costs, and such other further and different relief as is deemed just and proper, or whatever else a court of equity deems fair, justifiable and reasonable.

Most of these claims in the various causes of action did not accrue until the harm was realized and the damages set, and that did not happen until the foreclosure of the property in 2014. Also the discovery rule will come into play because of the fraud associated with the financing and the dirty tactics. This will excuse any statute of limitation problem initially perceived and not remedied through other legal doctrines.

**DEFENDANTS' DESCRIPTION OF THE CASE**

As an initial matter, Defendants struggle to decipher Plaintiffs' claims and to ascertain the nature of the allegations against them. The Amended Complaint is more than 160 pages long and contains 23 claims presented in a confusing and rhetorical manner that does not comport with the Federal Rules. *See, e.g.*, Fed. R. Civ. P. 8; Fed. R. Civ. P. 11(b). Plaintiffs purport to assert claims

for, *inter alia,* fraud, breach of fiduciary duty, breach of contract, federal RICO, and state securities law violations. It is apparent that Plaintiffs have failed to state a viable claim against Defendants.

This case concerns Plaintiffs' investment in a "Tenant-In-Common" ("TIC") structure by which they acquired undivided property interests in a shopping center known as the East West Shops in Austell, Georgia (the "Property"). Roughly seven years after making that investment, and after the property was foreclosed upon, Plaintiffs commenced this lawsuit alleging Defendants somehow misled them about the nature of that investment.

While Plaintiffs muddle together a variety of different transactions, there are several distinct transactions described in the Amended Complaint. For the Court's convenience, we parse them out here:

- **Gemini Planned the Acquisition of Commercial Property**. Certain Gemini Defendants sourced the investment in the Property and sought investment from sophisticated individual investors (the Plaintiffs) who were seeking real estate investments so they could obtain exemption from federal capital gains taxes (under Section 1031 of the Internal Revenue Code). Gemini Real Estate Advisors LLC ("Gemini Real Estate") formed Gemini East West S LLC ("Gemini S") to sell TIC interests in the Property, and formed other entities to become joint tenants in common with the investors and manage the East West Shops.[1] Plaintiffs purchased their property interests from Gemini S, pursuant to certain offering documents, which explicitly informed Plaintiffs about the risks associated with their investment.
- **Gemini Obtained Financing for the Property**. In June 2007, RBS Financial Products Inc. ("RBSFP") loaned $14,250,000 to Gemini S and Gemini H to provide financing for their acquisition of the Property (the "Loan").
- **Lender Sold the Loan**. In October 2007, RBSFP sold the Loan for inclusion in a commercial mortgage-backed securitization (the "Securitization"). Specifically, RBSFP sold the loan to Greenwich Capital Commercial Funding Corporation, the "depositor" ("GCCFC"), who caused the loan to be assigned to U.S. Bank, N.A., successor by merger to LaSalle Bank National Association as Trustee for Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2007 GG11, Commercial Mortgage Pass Through Certificates, Series 2007-GG11 (the "Trust"). Plaintiffs are <u>not</u> investors in the Securitization, and the Securitization has nothing to do with this case.
- **The Securitization Closed**. In October 2007, the Securitization closed. The Trust was comprised of more than $2.7 billion of commercial loans, of which the $14 million Loan here was only a small part. RBS Securities, Inc. and Goldman, Sachs

---

[1] These entities are: Gemini East West H, LLC ("Gemini H"), and Gemini East West M, LLC ("Gemini M"). Other Gemini defendants include Gemini Property Management, LLC ("Gemini Property"), the manager of the Property, and individuals William T. Obeid and Dante Massaro.

- **The Loan Defaulted**. The Property was not a success. Borrowers (which include Plaintiffs) defaulted on the Loan. The Trust assigned the Loan to Defendant GCCFC 2007 Connector Retail Limited Partnership ("CRLP"). CRLP took title to the Property on or about September 4, 2014 following a nonjudicial foreclosure sale and the recording of a deed under power of sale was recorded by the Clerk of Superior Court, Cobb County.

& Co. both served as underwriters for the Securitization. Neither party had any dealings with Plaintiffs.

All Defendants plan to move to dismiss the Amended Complaint. As a threshold matter, this action is time barred. This case was commenced nearly seven years after Plaintiffs made their investment. As a result, the statutes of limitations have run on all claims relating to their initial investment. Moreover, Defendants maintain that the features of the TIC investment Plaintiffs complain about were fully disclosed by the Gemini Defendants in the documents Plaintiffs received and/or executed in connection with their TIC investment. Plaintiffs, to induce Gemini Defendants to sell the TIC investment, represented and warranted that they were sophisticated investors who read and understood these disclosures and who were not relying upon any statements other than those in these written disclosures in making their investment decision. Defendants maintain that all of Plaintiffs' claims are deficient as a matter of law on numerous other grounds and they should be dismissed with prejudice.

The RBS Defendants wish to highlight that they had no role in marketing or selling the TIC interests to Plaintiffs and Plaintiffs fail to allege they had any contact with the RBS Defendants.[2] Plaintiffs' sole basis for asserting claims against the RBS Defendants is to claim that the Gemini Defendants were the "agents" of the RBS Defendants. There is no support for that allegation in the Amended Complaint, and all claims against the RBS Defendants should be dismissed for that reason. Plaintiffs' RICO claim against the RBS Defendants fails for numerous reasons as well, including that affiliated entities like the RBS Defendants cannot constitute a RICO enterprise under applicable law.

There similarly is no basis for any claims against Goldman, Sachs & Co. or Goldman Sachs Mortgage Company (collectively, the "Goldman Sachs Defendants") and Plaintiffs plead none. The Amended Complaint does not allege that any Goldman Sachs entity engaged in any activity involving or directly affecting Plaintiffs or communicated or interacted with Plaintiffs in any way. To the contrary, the Amended Complaint makes clear that the Goldman Sachs Defendants had no involvement in the transactions at issue. (*See* Am. Compl. ¶ 51.) The Amended Complaint includes only four paragraphs of allegations relating specifically to Goldman Sachs. (*See* Am. Compl. ¶¶ 71-72, 77-78.) Those paragraphs allege no connection between any action of Goldman Sachs and (a) Plaintiffs, (b) the East West Shops investments, or (c) any matter alleged in the Amended Complaint. By letter dated March 18, 2015, Goldman Sachs raised its concerns about the absence of any basis to include the Goldman Sachs Defendants in this litigation and requested that Plaintiffs inform them by April 8, 2015 whether they would withdraw their claims against the Goldman Sachs Defendants. The letter indicated that, if Plaintiffs refused to do so, Goldman Sachs

---

[2] The RBS Defendants are RBSFP, RBS Securities, Inc., and GCCFC.

would seek all appropriate remedies, including under Rule 11 of the Federal Rule of Civil Procedure, 28 U.S.C. § 1927 and the Court's inherent powers to proscribe baseless litigation. On April 7, 2015, Plaintiffs requested additional time to respond to Goldman Sachs' March 18, 2015 letter, and the parties expect to meet-and-confer on Monday, April 13, 2015, to discuss the letter.

## II. DEFENDANTS' CONTEMPLATED MOTIONS

Pursuant to the Court's order entered March 18, 2015, Defendants' Motions to Dismiss the Amended Complaint are due on July 24, 2015; Plaintiffs' opposition brief is due on August 24, 2015; and Defendants' replies are due on September 25, 2015. Dkt. 84.

## III. PROSPECTS FOR SETTLEMENT

There are no prospects for settlement at this time.

Dated: April 9, 2014

Respectfully submitted,

MURRIN LAW FIRM
/s/ J. Owen Murrin

_____
J. Owen Murrin (CA 75329)
Attorney for Plaintiffs

Dated: April 9, 2015

DLA PIPER LLP (US)
401 B STREET, SUITE 1700
SAN DIEGO, CA 92101-4297

By /s/ Robert W. Brownlie
ROBERT W. BROWNLIE (*pro hac vice pending*)
robert.brownlie@dlapiper.com
619.699.2700
KELLIN M. CHATFIELD
SDNY Bar No. KC 1551
kellin.chatfield@dlapiper.com
619.699.2700

Attorneys for Defendants
GEMINI REAL ESTATE ADVISORS LLC; GEMINI EAST WEST S LLC; GEMINI EAST WEST H, LLC; GEMINI EAST WEST M, LLC; GEMINI ACQUISITION COMPANY, INC.; GEMINI PROPERTY MANAGEMENT, LLC; WILLIAM T. OBEID; and DANTE A. MASSARO

Dated: April 9, 2015

                                            DUANE MORRIS LLP
                                            1540 BROADWAY
                                            NEW YORK, NY 10036-4086

By  s/ Suzan Jo
     SUZAN JO
     SDNY Bar No. SJ1974
     sjo@duanemorris.com
     212.692.1000
     KEVIN P. POTERE
     SDNY Bar No. KP7711
     kppotere@duanemorris.com
     212.692.1000

     Attorneys for Defendants
     U.S. BANK, N.A., SUCCESSOR BY
     MERGER TO LASALLE BANK
     NATIONAL ASSOCIATION AS
     TRUSTEE FOR GREENWICH
     CAPITAL COMMERCIAL FUNDING
     CORP., COMMERCIAL MORTGAGE
     TRUST 2007 GG11, COMMERCIAL
     MORTGAGE PASS THROUGH
     CERTIFICATES, SERIES 2007-GG11
     and GCCFC 2007 CONNECTOR
     RETAIL LIMITED PARTNERSHIP

DATED:  April 9, 2015

MORGAN, LEWIS & BOCKIUS LLP
399 PARK AVENUE
NEW YORK, NY 10022-4689

By  s/ Susan F. Dicicco
　　SUSAN F. DICICCO
　　SDNY Bar No. SD 8013
　　susan.dicicco@morganlewis.com
　　212.705.7000
　　BRIAN A. KATZ
　　SDNY Bar No. BK 1967
　　brian.katz@morganlewis.com
　　212.705.7000

　　Attorneys for Defendants
　　RBS FINANCIAL PRODUCTS INC.,
　　RBS SECURITIES INC., and RBS
　　COMMERCIAL FUNDING INC. f/k/a
　　GREENWICH CAPITAL
　　COMMERCIAL FUNDING
　　CORPORATION

DATED: April 9, 2015

SULLIVAN & CROMWELL LLP
125 BROAD STREET
NEW YORK, NY 10004-2498

By  s/ Richard H. Klapper
    RICHARD H. KLAPPER
    SDNY Bar No. RK0069
    klapperr@sullcrom.com
    212.558.4000
    THEODORE EDELMAN
    SDNY Bar No. TE4678
    edelmant@sullcrom.com
    212.558.4000
    JACOB M. CROKE
    SDNY Bar No. JC3349
    crokej@sullcrom.com
    212.558.4000

Attorneys for Defendants
GOLDMAN, SACHS & CO. &
GOLDMAN SACHS MORTGAGE
COMPANY